MYERS, P. J.,
 

 for the Court.
 

 ¶ 1. Evelyn Gwen Moore filed a medical malpractice suit against Delta Regional Medical Center (DRMC) and its personnel alleging their negligence caused her to suffer a stroke. DRMC filed a motion to strike Moore’s experts as the designation of experts was incomplete and untimely. The trial court granted DRMC’s motion to strike and, subsequently, granted summary judgment to DRMC. Aggrieved from the trial court’s judgment, Moore appeals.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Moore was taken to the emergency room at DRMC on or about September 20, 2003, after it was discovered that her blood pressure was dangerously high.
 
 [1]
 
 It was also discovered that Moore had low potassium levels and was experiencing renal failure. Dr. Robert Corkern examined Moore and sent her to the nursing unit. Moore ultimately suffered a stroke while at DRMC.
 

 ¶ 3. On March 18, 2005, Moore filed a complaint against DRMC, Dr. Corkern, and DRMC’s nurses alleging medical malpractice. She contended that the defendants were negligent in their examination, assessment, and care of her. She claimed that the defendants failed to place her in the intensive care unit, failed to properly check her blood pressure, prescribed her the wrong medication, and gave her medication too quickly. Moore contended that these negligent acts proximately caused her stroke.
 
 [2]
 

 ¶ 4. The procedural history is particularly relevant to the present appeal. After Moore filed her original complaint, DRMC moved to dismiss the claim for Moore’s failure to attach a certificate of compliance in accord with Mississippi Code Annotated section 11-1-58 (Supp.2008). Moore filed a motion to amend her complaint, which the defendants agreed to allow. Following a motion to dismiss based on a failure to attach a certificate of consultation and an interlocutory appeal on other issues, the trial court set a scheduling order as follows: the plaintiff must designate her expert witness by August 24, 2007, and defendant must designate its expert witness by September 24, 2007.
 

 ¶ 5. On August 24, 2007, Moore designated Dr. Richard Sobel as her expert. On September 12, 2007, almost three weeks after her designation deadline, Moore filed her first supplemental desig
 
 *544
 
 nation of expert witnesses. In this first supplemental designation, Moore listed Dr. Sobel and Netra Cattenhead, a certified family nurse practitioner, as her experts. On September 24, 2007, on the date of its deadline, the defendant, DRMC, filed its designation of experts, listing three experts. On October 11, 2007, DRMC filed a motion for summary judgment alleging that Moore failed to comply with Mississippi Rule of Civil Procedure 26 by not adequately designating her experts prior to the deadline in the scheduling order; the court took the motion under advisement. On October 22, 2007, Moore filed her second supplemental designation of experts.
 

 ¶ 6. Thereafter, DRMC filed a motion to strike Moore’s expert designations as being untimely. The trial court conducted a hearing on DRMC’s motion to strike. At the conclusion of the hearing, the trial court found that Moore’s August 24, 2007, designation did not comply with Rule 26 and struck Moore’s expert, Dr. Sobel. The trial court also struck the designation of Nurse Cattenhead because the designation was made outside the designation deadline. Without an expert to support Moore’s claim, the trial court ultimately granted DRMC’s motion for summary judgment.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court employs a de novo standard of review of a lower court’s grant or denial of summary judgment.
 
 Heigle v. Heigle,
 
 771 So.2d 341, 345(¶8) (Miss.2000). The evidence must be viewed in the light most favorable to the party against whom the motion has been made, and the moving party bears the burden of demonstrating that no genuine issue of material fact exists.
 
 Id.
 
 “[Tjhis Court looks at all evi-dentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.”
 
 Harrison v. Chandler-Sampson Ins., Inc.,
 
 891 So.2d 224, 228(¶ 11) (Miss.2005) (citation omitted). If there is no genuine issue of material fact, then the moving party is entitled to judgment as a matter of law.
 
 Heigle,
 
 771 So.2d at 345(¶ 8). On the other hand, “[i]f there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party.”
 
 Neely v. N. Miss. Med. Ctr., Inc.,
 
 996 So.2d 726, 729(¶ 11) (Miss.2008) (citations omitted).
 

 I. WHETHER THE TRIAL COURT ERRED IN STRIKING MOORE’S EXPERTS.
 

 ¶ 8. A prima facie case for medical malpractice must be made by proving the following elements: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.
 
 Drummond v. Buckley,
 
 627 So.2d 264, 268 (Miss.1993) (citing
 
 Burnham v. Tabb,
 
 508 So.2d 1072, 1074 (Miss.1987)). ‘When proving these elements in a medical malpractice suit, expert testimony must be used.”
 
 Barner v. Gorman,
 
 605 So.2d 805, 809 (Miss.1992) (citing
 
 Latham v. Hayes,
 
 495 So.2d 453, 459-60 (Miss.1986)). “Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.”
 
 Id.
 

 ¶ 9. In order to facilitate and expedite the proceedings in the present case, the trial court, upon agreement by both parties, instituted a scheduling order. The relevant deadlines were: plaintiff must designate her expert by August 24, 2007; defendant, DRMC, must designate its ex
 
 *545
 
 pert by September 24, 2007; all discovery must be completed by November 9, 2007; and all motions, except motions in limine, must be filed by November 23, 2007. Trial was set to begin on December 3, 2007, with an alternative date of June 9, 2008.
 

 ¶ 10. In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion.
 
 Thompson v. Patino,
 
 784 So.2d 220, 223(¶22) (Miss.2001) (citing
 
 Dawkins v. Redd Pest Control Co.,
 
 607 So.2d 1232, 1235 (Miss.1992)).
 

 ¶ 11. On August 24, 2007, the date of Moore’s deadline for designating an expert, she filed a designation listing Dr. Sobel as her expert witness. This designation was in response to DRMC’s interrogatories. We quote Moore’s designation of Dr. Sobel verbatim:
 

 [T]he above-listed expert will provide testimony regarding the breach of the standard of care owed to Plaintiff by DRMC and Robert Corkern, M.D. Plaintiff reserves the right to introduce the transcript of Dr. Sobel’s deposition testimony in lieu of calling him live at trial. Plaintiff expects to request that Dr. Sobel’s opinions may be modified by the evidence presented. Furthermore, Dr. Sobel may rebut any expert opinions offered by experts testifying on behalf of Defendant. All opinions of Dr. Sobel will be expressed in terms of reasonable medical probabilities and are based on his education, knowledge, training, and experience. Plaintiff reserves the right to supplement the substance of which Dr. Sobel is expected to testify to as discovery develops. A copy of Dr. Sobers curriculum vitae is attached hereto as exhibit “A.”
 

 DRMC filed a motion to strike Moore’s experts arguing that this designation did not comply with Rule 26. Naturally, Moore argues that the designation fulfilled the requirements of Rule 26.
 

 ¶ 12. Mississippi Rule of Civil Procedure 26 (b) (4) (A) (i) states that: “A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.” Under this rule, the opposing party must supply the identity of their experts, the subject matter of their opinions, their opinions, the facts on which they based their opinions, and a summary of their opinions.
 
 Id.
 
 “Rule 26 requires strict compliance to avoid unfair surprise.”
 
 Thompson,
 
 784 So.2d at 223(¶ 22).
 

 ¶ 13. We must begin by determining whether Moore met the requirements of Rule 26. The supreme court addressed this issue in
 
 State Highway Commission v. Havard,
 
 508 So.2d 1099 (Miss.1987).
 
 Ha-vard
 
 was an eminent domain case with the measure of compensation for the taking being one of the issues on appeal.
 
 Id.
 
 at 1100. The State Highway Commission argued on appeal that the plaintiff’s expert was allowed to testify about comparable land sales that were not disclosed in discovery.
 
 Id.
 
 at 1103. In response to one of the defendant’s interrogatories, the plaintiff responded that:
 

 John Guthrie, Wiggins, Mississippi, Mr. Guthrie will testify that the highest and best value of the property in question is rural residential and that the value of the property taken and the damage to the remainder is $14,200.00. Mr. Guthrie will base that opinion upon a series of comparable sales for approximately the past eight (8) years.
 

 
 *546
 

 Id.
 
 The supreme court found that this disclosure met the summary of the grounds requirement under Rule 26, “albeit a barebones one.”
 
 Id.
 
 at 1104.
 

 ¶ 14. The supreme court addressed this issue again in
 
 Palmer v. Volkswagen of America, Inc.,
 
 904 So.2d 1077 (Miss.2005). In this tort action, the plaintiffs, in their designation of experts, “named Myrna Kruckenburg as a fact and expert witness to testify to the extent and nature of injuries sustained by Plaintiffs, Randal Palmer, Lynn Palmer, and Ann Palmer, as well as the treatment rendered.”
 
 Id.
 
 at 1089(¶ 52). “Plaintiffs further stated that they had ‘not yet received Mr. and Mrs. Kruckenburgs’ curriculum vitae or estimated cost for deposition or trial testimony, but they will supplement as soon as said documents are received.’ ”
 
 Id.
 
 The supreme court found that the plaintiffs failed to provide the required expert information under Rule 26 and affirmed the trial court’s refusal to allow the expert to testify.
 
 Id.
 
 at 1089-90 (¶¶ 53-55).
 

 ¶ 15. In the case at bar, we cannot say that Moore’s designation fulfilled the requirements of Rule 26 prior to the deadline. Moore’s designation of Dr. Sobel on August 24, 2007, satisfied one or two, at best, of the requirements of Rule 26. Moore provided the name of her expert and, arguably, the subject matter of his opinion. Regardless of whether the designation contained the subject matter of Dr. Sobel’s expert opinion, the designation failed to state his opinion, the facts on which he based his opinion, and a summary of the grounds supporting his opinion. Moore’s designation of Dr. Sobel provided considerably less information than the “barebones” designation in
 
 Havard.
 

 ¶ 16. The next step is to determine whether the trial court abused its discretion in striking Moore’s experts.
 

 ¶ 17. Courts have applied a four-factor test to determine whether excluding evidence for a transgression in discovery is an appropriate sanction. This four-factor test was applied in
 
 Mississippi Power & Light Co. v. Lumpkin,
 
 725 So.2d 721, 733-34(¶ 60) (Miss.1998). There, the supreme court stated that before a trial court excludes evidence for a transgression in discovery, it should consider: (1) the explanation for the transgression; (2) the importance of the testimony; (3) the need for time to prepare to meet the testimony; and (4) the possibility of a continuance.
 
 Id.
 
 (citing
 
 Murphy v. Magnolia Elec. Power Ass’n,
 
 639 F.2d 232, 235 (5th Cir.1981)). “The first consideration involves a determination whether the failure was deliberate, seriously negligent or an excusable oversight. The second consideration involves an assessment of harm to the proponent of the testimony. The third and fourth considerations involve an assessment of the prejudice to the opponent of the evidence, the possibility of alternatives to cure that harm and the effect on the orderly proceedings of the court.”
 
 Id.
 

 ¶ 18.
 
 In Lumpkin,
 
 the defendants responded to the plaintiffs expert interrogatories stating that their experts were “expected to testify that in their opinion the pole and line in question was constructed and maintained in accordance with the National Electric Safety Code and generally accepted industry standards.”
 
 Id.
 
 at 733(¶ 59). At trial, the defendants asked their expert about the foreseeability of accidents at a certain location, which was objected to and sustained. The supreme court ruled the trial court erred in limiting the expert’s testimony finding that:
 

 Answers to interrogatories indicated that he would state an opinion that the placement of the pole complied with NESC standards. That testimony necessarily includes an assessment as to the
 
 *547
 
 foreseeability of accidents such as this. Foreseeability was clearly the main issue in the case about which Lumpkin was prepared to and did offer expert testimony.
 

 Id.
 
 at 734(¶ 61). The court also considered that there would be no need for additional time to prepare for the expert testimony and that Lumpkin did not claim surprise or prejudice if the expert testimony was admitted.
 
 Id.
 
 Thus, the supreme court ruled that excluding the expert testimony, under the circumstances of the case, was an abuse of discretion.
 
 Id.
 

 ¶ 19. Turning to the case at bar, we will address each factor in detail using only the original designation. We will not consider the first and second supplemental responses because they were filed outside the designation deadline.
 

 1. Explanation for the Failure to Comply
 

 ¶ 20. During the hearing on the motion to strike, Moore’s counsel was asked why he did not adequately designate Moore’s expert, Dr. Sobel, by the deadline. Moore’s attorney attempted to blame his own expert for the tardiness. He continuously stated that he provided the experts with the documents to formulate an opinion, yet the experts did not provide their reports and opinions prior to the deadline. Moore’s attorney also tried to blame the court as a reason he did not designate the experts by August 24, 2007. On October 28, 2005, DRMC filed a motion to dismiss based upon the statute of limitations. The motion was heard on March 16, 2006, at which time the trial court stayed its ruling pending a decision in a separate case in the supreme court.
 
 [3]
 
 On April 9, 2007, the trial court denied DRMC’s motion to dismiss. Moore’s counsel tried to argue that this case really started on April 9, 2007, when the trial court denied the motion to dismiss, rather than on March 18, 2005, when Moore filed her complaint against DRMC.
 
 [4]
 
 We find this argument to be unpersuasive. Moore’s counsel is charged with obtaining experts and providing the necessary information to the experts in order to receive an expert opinion by the designation-of-expert deadline. Over two and one-half years passed between Moore’s filing of her complaint and her deadline for designating an expert.
 
 [5]
 
 We find that this is more than ample time to find an expert and obtain their opinion. The reasons proffered by Moore’s counsel do not rise to good cause, excusable neglect, or special circumstances.
 
 See Mallet v. Carter,
 
 803 So.2d 504, 507(¶ 9) (Miss.Ct.App.2002). Accordingly, this factor weighs in favor of DRMC.
 

 2. Importance of the Testimony
 

 ¶21. In order to prove medical malpractice, an expert is needed.
 
 See La-tham,
 
 495 So.2d at 459-60. By striking Dr. Sobel and Nurse Cattenhead, Moore was left without an expert and was unable to prove medical malpractice. Thus, Dr.
 
 *548
 
 Sobel and Nurse Cattenhead’s expert testimonies are very important to Moore’s case.
 

 ¶ 22. However, the United States Fifth Circuit Court of Appeals has stated that “the importance of [expert] testimony cannot singularly override the enforcement of ... scheduling orders.”
 
 Barrett v. Atlantic Richfield Co.,
 
 95 F.3d 375, 381 (5th Cir.1996). “[T]he claimed importance of Plaintiffs’ expert testimony merely underscores the need for Plaintiffs to have complied with the court’s deadlines or at least informed the trial judge in advance if good faith compliance was not possible.”
 
 Id.
 
 Moore filed this suit knowing that it required expert testimony. In fact, Moore had to attach a certificate of consultation with a physician in order for her to proceed with the medical malpractice suit under Mississippi Code Annotated section 11-1-58. Obviously, Moore’s counsel had to discuss Moore’s case with a physician prior to filing the complaint. However, Moore sat on her hands for over two and one-half years before sufficiently designating her experts.
 

 ¶ 23. Additionally, Moore could have employed another expert who would have provided a report prior to the designation deadline. Accordingly, this factor weighs in favor of neither party.
 

 3. The Need for Time to Prepare to Meet the Testimony
 

 ¶ 24. Contrary to what Moore adamantly states in her brief, this factor involves determining the prejudice to DRMC, not Moore. The Fifth Circuit has substituted potential prejudice in allowing the testimony in lieu of the time needed to prepare to meet the testimony factor applied in Mississippi.
 
 See, e.g., Betzel v. State Farm Lloyds,
 
 480 F.3d 704, 707 (5th Cir.2007).
 

 ¶ 25. Both parties agree that this is a complex case. It involves thousands of documents, several witnesses, and, more importantly, experts testifying for both sides. Obviously, it will take a great deal of time to prepare for trial. Relevant to this appeal is the time expended and the prejudice DRMC will suffer if Moore is allowed to proceed using Dr. Sobel and Nurse Cattenhead as experts.
 

 ¶ 26. DRMC will suffer great prejudice if it is forced to proceed only with Moore’s original designation. As we stated earlier, it failed to provide Dr. Sobel’s opinion, the facts on which he based his opinion, and a summary of the grounds for his opinion. Using only the original designation, DRMC will not have the necessary information to provide its expert with the materials needed to formulate an appropriate opinion. DRMC’s expert would not have Dr. Sobel’s expert’s opinion or the facts on which he based his opinion. Moreover, by using only the original and timely designation, DRMC would not know that Nurse Cattenhead was going to be used an expert. One of the main principles of Rule 26 is to avoid unfair surprise at trial.
 
 See Young v. Meacham,
 
 999 So.2d 368, 372(¶ 16) (Miss.2008) (citations omitted). If DRMC was to proceed using only Moore’s original designation, it would have been a complete shock to them when Moore attempted to use Nurse Cattenhead as one of her experts.
 

 ¶ 27. Additionally, if Dr. Sobel’s deposition was allowed to proceed as scheduled, DRMC would also have been prejudiced.
 
 [6]
 
 Trial in this case was scheduled to begin on December 3, 2007, approximately two weeks after Dr. Sobel’s deposition. In preparation for trial, DRMC would likely
 
 *549
 
 have requested that their expert, or another physician, review Dr. Sobel’s deposition and the facts and exhibits from which he derived his conclusions. This would surely require more than two weeks of preparation. If DRMC was forced to proceed with the deposition and trial at its scheduled times, it likely would not have been fully prepared for cross-examination, thus causing great prejudice to its case. Therefore, this factor weighs in favor of DRMC.
 

 A
 
 The Possibility of a Continuance
 

 ¶ 28. As stated above, trial was set to begin on December 3, 2007. If both parties were not ready for trial, they had agreed on an alternative date of June 9, 2008. However, given the two-and-one-half-year gap from when the complaint was filed and the scheduled trial date, the trial judge was not open to continuing this matter for another six to seven months. This matter had been ongoing for over two years. The Fifth Circuit recognized such a problem in
 
 Barrett,
 
 stating that “it is likely that a continuance would have resulted only in additional delay and would have unnecessarily increased the expense of defending the lawsuit.”
 
 Barrett,
 
 95 F.3d at 381. The same result would likely occur in the case at bar. Moore would have continued her sluggish pace in preparing for the trial. Moreover, Moore has “made no effort to demonstrate to the Court that a continuance would deter future dilatory behavior on [her] part rather than merely create further delay and added expense.”
 
 Browning v. City of Batch Springs,
 
 1997 WL 361632, 1997 U.S. Dist. LEXIS 23902, *14-15. Therefore, we find this factor weighs slightly in favor of DRMC.
 

 ¶ 29. Applying the four-factor test outlined in
 
 Lumpkin,
 
 we find the trial court did not abuse its discretion in striking Moore’s experts. Moore’s timely designation of Dr. Sobel failed to meet the requirements of Rule 26. The first and second supplemental responses were clearly outside the deadline and will not be considered. Next, we must determine whether granting summary judgment was proper.
 

 II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.
 

 ¶ 30. After striking Dr. Sobel and Nurse Cattenhead, Moore was left with no medical expert. Subsequently, the trial court granted summary judgment in favor of DRMC. As stated above, a plaintiff must have an expert to proceed in a medical malpractice action. Without any experts, Moore did not have a leg to stand on. Therefore, we must look to the remaining evidence in the record to determine if Moore can prove medical malpractice. In her responses to DRMC’s motion for summary judgment, Moore provided her original designation of expert, notice of deposition for Dr. Sobel, the scheduling order, and her response to DRMC’s interrogatories, which included the tardy designations, that we will not consider. Moore’s responses contained no affidavits from any experts. After reviewing these documents, we find that Moore did not establish each of the elements of a prima facie case of medical malpractice. Therefore, we find that the trial court’s grant of summary judgment for DRMC was appropriate. Therefore, this issue is without merit.
 

 III. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE.
 

 ¶ 31. “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice.”
 
 Boone v. State,
 
 973 So.2d 237, 241(¶ 13) (Miss.2008). Moore argues that the trial court abused
 
 *550
 
 its discretion by not continuing her case to the alternative trial date. We addressed this argument in Issue I and found that the trial court did not abuse its discretion in not granting Moore’s motion for a continuance. Accordingly, this issue is without merit.
 

 ¶ 32. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . At DRMC, Moore’s blood pressure was 265/158.
 

 [2]
 

 . The remaining defendants were dismissed with prejudice leaving only DRMC as the defendant.
 

 [3]
 

 .
 
 Nelson v. Baptist Mem'l Hosp.,
 
 973 So.2d 244, 2008 WL 356510 (Miss.2008).
 

 [4]
 

 . Moore makes a separate argument that it was reversible error because DRMC did not file a motion to compel prior to the trial court striking Dr. Sobel. However, our supreme court has stated that "parties who file appropriate interrogatories seeking expert information [do not] acquire the additional burden of filing a motion to compel, where they are provided an answer which promises supplementation.”
 
 Palmer,
 
 904 So.2d at 1090(¶ 55). Thus, Moore's contention that a motion to compel is a condition precedent to striking an expert for failure to be properly and timely designated is without merit.
 

 [5]
 

 .Nurse Cattenhead testified in her November 2, 2007, deposition that Moore's counsel had first contacted her regarding this case approximately one month prior to the deposition.
 

 [6]
 

 .
 
 DRMC had deposed Nurse Cattenhead prior to the hearing on the motion to strike.