FAIR, J.,
for the Court:
¶ 1. Richard and Shelia Palermo brought action against LifeLink Foundation, Inc. d/b/a LifeLink Tissue Bank (“LifeLink”) along with other defendants for strict products liability, products-liability negligence, and breach of warranty,[1] alleging LifeLink supplied a contaminated/infected allograft[2] for his surgery. Extensive discovery, various motions, and settlements resulted in the dismissal of all defendants, including LifeLink. Its dismissal as the last defendant occurred when the trial judge granted LifeLink’s motion for summary judgment. That decision gave rise to this appeal. We affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On March 2, 2005, Richard injured his right knee while working as an employee for Letourneau Technologies Inc. Richard sought treatment from Dr. Gene Barrett, an orthopedic surgeon at Mississippi Baptist Medical Center (MBMC). Dr. Barrett recommended surgery described as “anterior cruciate ligament construction and medical meniscus repair and the use of an allograft.”
¶ 3. On March 22, 2005, LifeLink, a nonprofit tissue bank, filled an order placed by Nutech Medical Inc. (“NuTech”) for a ti-bialis tendon-anterior allograft. Prior to LifeLink’s shipment of the allograft, it was tested and there were no findings of sepsis or medical infection in the medical history or autopsy of the allograft donor. LifeL-ink shipped the allograft to Nutech, where it remained for six days. On March 28, 2005, Nutech shipped the allograft to Medical Arts East Physician Surgery Center in Jackson, Mississippi. Dr. Barrett performed Richard’s surgery with the allo-graft on April 5, 2005. After the surgery, Richard’s knee began to exhibit signs of infection. Dr. Barrett removed the allo-graft from Richard’s knee on May 11, 2005, and the infection subsided. After the allograft was removed from Richard’s knee on May 11, 2005, further testing was done on the allograft. It showed that no bacteria was present.
¶ 4. The Palermos filed their first complaint in this action on March 7, 2007, against numerous defendants, including MBMC, Dr. Barrett, NuTech, and LifeL-ink. After the dismissal of several defendants, the Palermos filed a First Amended and Supplemental Complaint agaipst Li-feLink on March 16, 2010.
¶ 5. The parties entered into a scheduling order, and discovery was set to be completed on June 30, 2010. On March 24, 2010, the Palermos designated Dr. Keith Melancon and Dr. Olen Brown. On May 18, 2010, LifeLink designated Elizabeth Horn-Brinson as an expert in the field of tissue bank processing and preservation. On October 13, 2010, the Palermos designated Dr. Marion Kainer to refute *1179 the testimony of Horn-Brinson. The court denied the expert designation, finding that the designation was outside of the scheduling order and did not constitute a seasonable supplementation of an existing expert’s testimony.
¶ 6. LifeLink moved for summary judgment on August 9, 2011. On November 7, 2011, the Palermos filed a motion to request a court reporter for the summary judgment motion. In their motion, the Palermos stated that they had engaged an official court reporter to transcribe the hearing. Their court denied their motion, ruling that presence of a court reporter was not required. On December 20, 2011, the trial court granted summary judgment in favor of LifeLink. In its opinion and order, the court determined that Mississippi’s public health statute, Mississippi Code Section 41-41-1 (Rev.2013), also applied to human tissue and therefore prohibited the Palermos’ claims brought under the Mississippi Products Liability Act as codified in Mississippi Code Annotated section 11-1-63 (Rev.2012)-strict products liability, product-liability negligence, and breach of warranty. The court also stated that, because the Palermos failed to prove the elements of breach of duty or causation, they could not prove a case of simple negligence.
¶ 7. On appeal, the Palermos argue the following issues: (1) the trial judge committed reversible error in granting LifeL-ink’s motion for summary judgment, (2) the trial judge abused his discretion in denying the Palermos’ supplementary expert designation of Dr. Marion Kainer, and (3) the trial judge abused his discretion in denying the Palermos’ request for a court reporter to transcribe the hearing on summary judgment. Finding no error, we affirm the decision of the trial court.
DISCUSSION
1. Grant of Summary Judgment
¶ 8. We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment. Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citation omitted). Summary judgment is proper where “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)). In determining whether the trial court properly granted summary judgment, we view the facts in the light most favorable to the nonmovant. Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999).
¶ 9. Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.” Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citation omitted). To withstand summary judgment, the nonmoving party must produce significant probative evidence of a genuine issue for trial. Id. (citing Price v. Purdue Pharm. Co., 920 So.2d 479, 485 (¶ 16) (Miss.2006)).
¶ 10. This case presents two legal issues to be resolved de novo by the court. First, we are called on, in this case of first impression, to determine whether the law of strict products liability applies in cases where donated human tissue causes injury. Second, we must decide whether the facts of this case are legally sufficient to allow a jury to decide the issue of negligence on the part of LifeLink.

A. Strict Product Liability

¶ 11. The Palermos claim that because “tissue” is not specifically excluded from *1180 the products-liability statute, this court should find that tissue may be considered a product.
¶ 12. The Mississippi Products Liability Act (MPLA) codified at section 11-1-63, states in relevant part:
(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
(i) 1. The product was defective because it deviated in a material way from the manufacturer’s specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
2. The product was defective because it failed to contain adequate warnings or instructions, or
3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition ' of the product-proximately caused the damages for which recovery is sought.
Miss.Code Ann. § 11-1-63.
¶ 13. Mississippi’s public-health statute, section 41-41-lof the Mississippi Code Annotated, however, specifically provides protection for those persons or entities who use “human tissue” for medical purposes. With the codification of section 41-41-1, the Mississippi Legislature recognized that there is a strong public-policy interest in protecting those persons and entities who facilitate blood, blood products, human tissue, and organ donation from claims brought under the MPLA or similar products-liability statutes.
¶ 14. Section 41 — 41—1, states in pertinent part:
The procurement, processing, storage, distribution and/or use of whole blood, plasma, blood products and blood derivatives, human tissue, organs or bones for the purpose of injecting, transfusing, transplanting or transferring the same or any of them into the human body for all purposes whatsoever constitutes the rendering of a service by every person participating therein, whether or not any remuneration is paid therefor, and does not constitute a. sale. The maximum usable life span or shelf life for human blood preserved in citrate phosphate dextrose shall be governed by federal regulations promulgated and adopted by the Food and Drug Administration.
Miss.Code Ann. § 41-41-l(emphasis added). This section recognizes that medical transfusions and transplants are the rendering of medical services, notwithstanding that a tangible item is involved in the process.
¶ 15. The Mississippi Supreme Court has not heretofore been given the opportunity to interpret section 11-1-63 in the context of section 41-41-1 as to whether human tissue, donated through the services of a tissue bank, may be considered a product. Accordingly, this presents us with a matter of first impression: is section 41 — 41—1 an exception to section 11 — 1— 63, as LifeLink asserts and the trial judge found, or is section 11-1-63 an exception to section 41 — 41—1, as argued by the Paler-mos? “In a ease of first impression Mississippi Courts look to other jurisdictions in determining the matter.” Sheppard v. Miss. State Highway Patrol, 693 So.2d 1326, 1329 (Miss.1997) (citation omitted).
*1181 ¶ 16. Nearly every state has some type of “blood shield” akin to Mississippi’s section 41^11-1. The case law reflects that there is a nationwide antipathy over applying products-liability or strict-liability concepts to body parts such as blood and tissue. See, e.g., Condos v. Musculoskeletal Transplant Found., 208 F.Supp.2d 1226, 1229-80 (D.Utah 2002) (finding that donated human bone tissue used to repair plaintiffs spine was not a product subject to strict products liability); Cryolife Inc. v. Superior Court, 110 Cal.App.4th 1145, 2 Cal.Rptr.3d 396, 405 (Cal.Ct.App.2003) (holding that a human tendon allograft provided by tissue bank was not a product under the relevant California statute); Zichichi v. Middlesex Mem’l Hospital, 204 Conn. 399, 528 A.2d 805, 809 (1987).
¶ 17. Further, Mississippi has recognized the striet-products-liability provisions found in the Restatement (Second) of Torts. The Restatement (Third) updates the area of products-liability law in light of the extensive use of human tissue and states: [H]uman blood and human tissue[,] even when provided commercially, are not subject to the rules of this Restatement.” Restatement (Third) of Torts § 19 (1998). This update clarifies human tissue, such as the allograft in this case, as excepted from designation as a “product.”
¶ 18. Striet-products-liability protection is not provided for the distribution of human tissue for medical procedures under the public policy of Mississippi underlying section 41-41-1, as well as the strong nationwide public policy established against such liability in statutes and case law in the overwhelming majority of other states. Further, this court finds that, like blood made available for transfer to others, human tissue provided to others in medical procedures is not a “product” subject to products-liability law, and the distribution of human tissue, including reasonable payments for related services, does not constitute a “sale” for purposes of strict liability.

B. Negligence

¶ 19. The Palermos also assert products liability negligence in their complaint. In accordance with our finding today that human tissue is not a product under the MPLA, the Palermos products-liability negligence claim fails.
¶ 20. Notwithstanding the MPLA, the Palermos still do not survive the summary judgment stage on claims of simple negligence. In order to prove negligence, plaintiff must prove duty, breach, causation, and injury. Meena v. Wilburn, 603 So.2d 866, 869 (Miss.1992). “Duty and breach of duty are essential to finding negligence and must be demonstrated first.” Rein v. Benchmark Contr. Co., 865, So.2d 1134, 1143 (¶ 30) (Miss.2004) (citation omitted).
¶21. The record shows that LifeLink, as a tissue bank, is required to follow certain guidelines with regard to testing, packaging, and distributing human tissue set by the United States Food and Drug Administration (FDA) and the American Association of Tissue Banks (AATB). Horn-Brinson, LifeLink’s expert in the field of tissue-bank processing and preservation methods, stated that, at the time this allograft was procured, she was responsible for ensuring that LifeLink complied with the FDA and AATB. Horn-Brinson testified on the processing methods used for the particular allograft in this casé. In packaging the allograft for shipment, LifeLink followed the AATB’s standards for tissue banking, which require processed frozen or eryopreserved muscu-loskeletal tissue to be stored at negative forty degrees Celsius or colder. The record shows that the allograft used for Richard’s surgery was shipped on dry ice and *1182 stored at the required temperature during delivery. LifeLink had no more handling of the allograft after it was shipped to NuTeeh on March 22, 2005. Six days later, NuTech shipped the allograft to Medical Arts East Physician Surgery Center in Jackson, Mississippi.
¶ 22. The Palermos did not provide any evidence or expert testimony to show that LifeLink did not comply with the requirements issued by the FDA and AATB. On the contrary, the Palmeros’ expert, Dr. Olen Brown, stated in his deposition that LifeLink is a “good company” and complied with FDA regulations. Dr. Melan-con, also one of the Palermos’ experts, was asked in his deposition whether he had any criticism of LifeLink’s processing methods. Dr. Melancon stated that he did not have any criticism, as he unaware of LifeLink’s process for taking steps against contamination.
¶ 28. The Palermos are barred from bringing a strict-products-liability claim or products-liability claim against Li-feLink. They also failed to create a “genuine issue of material fact” as to whether LifeLink breached any duty to Richard. Therefore, we find the Palermos’ arguments under this issue to be meritless and affirm the trial court’s grant of summary judgment in favor of LifeLink.
2. Exclusion of Dr. Kainer as a Witness
¶ 24. The Palermos argue that the trial court improperly struck their expert, Dr. Kainer. “Only in cases of abuse of discretion will we reverse a trial court’s ruling on discovery matters.” Palmer v. Volkswagen of Am. Inc., 904 So.2d 1077, 1090 (¶ 54) (Miss.2005) (citation omitted).
¶ 25. The court originally set June 30, 2010, as the deadline for discovery. In the scheduling order, the judge ordered the Palermos’ experts be designated in March 2010 and LifeLink’s experts to be designated in May 2010. After various motions to compel production filed by both parties and the Palmeros’ motion to extend the discovery deadline, the court granted an extension until October 14, 2010, but only for enforcement and compliance with existing discovery requests.
¶26. On October 13, 2010, the Paler-mos filed a “supplemental” expert designation of Dr. Kainer, an infectious-disease physician and healthcare epidemiologist. LifeLink subsequently filed a motion to strike the Palermos’ supplemental expert designation. The trial judge granted Li-feLink’s motion, stating that the Palermos should have anticipated testimony which would defend those handling processes, since they had asserted that LifeLink did “carelessly, negligently, and recklessly screen, harvest, handle, test, store, package and distribute” the allograft “in the exercise of reasonable care and diligence should have known it was infected and/or contaminated.... ” They should have, therefore, designated experts accordingly and within the scheduling order. Referring to Mississippi Rule of Civil Procedure 26(b)(4)(A)(i), the trial judge noted that the Palermos’ designation of Dr. Kainer, an entirely new expert, was nearly seven months after their March 2010 deadline, and there was no reasonable explanation for the delay.
¶ 27. The trial judge cited the supreme court’s holding that:
Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of cases. Our trial judges also have a right to expect compliance with these orders, and then par *1183 ties/attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril.
Bowie v. Montfort Jones Mem’l Hosp., 861 So.2d 1087, 1042 (¶ 14) (Miss.2003) (citations omitted).
¶ 28. The Palermos claim that LifeL-ink’s designation of Horn-Brinson, and specifically her testimony regarding LifeL-ink’s processing methods, made it necessary for them to provide a rebuttal expert. However, Dr. Kainer’s affidavit made no mention of the standard of care. Further, in their complain against LifeLink, the Palermos’ negligence claim is the sole basis of their claims against LifeLink. “A party is under a duty seasonably to amend a prior response if he obtains information” that renders the initial response inadequate or where “a failure to amend the response is in substance a knowing concealment.” M.R.C.P. 26(f)(2). “ ‘Seasonably does not mean several months later. It means immediately.” West v. Sanders Clinic for Women P.A., 661 So.2d 714, 721 (Miss.1995) (citation omitted). This observation was made by the trial judge in detailed findings supporting his determination that the designation of Dr. Kainer, or any other expert on that issue, was unreasonably late.
¶ 29. Before excluding Dr. Kainer as an expert, the trial judge also applied the four-factor test used by our courts in determining whether sanctions are appropriate for discovery transgressions.[3] We find that the judge did not abuse his discretion in excluding Dr. Kainer.
3. Denial of Palermos’ Motion for a Court Reporter
¶ 30. On appeal, the Palermos argue that the trial judge abused his discretion in denying their request for their own, separately retained court reporter to transcribe the summary judgement hearing. Here, we find that any error made by the trial court would be considered harmless error. However, notwithstanding our finding on LifeLink’s summary-judgment motion, this argument is without merit
¶ 31. “The orderly administration of justice dictates that the trial judge be vested with a considerable amount of discretion with respect to trial calendaring and docket management, and we will not overturn a trial court’s decision absent an abuse of discretion.” Ross v. State, 954 So.2d 968, 992 (¶ 41) (Miss.2007) (citation omitted).
¶ 32. The Palermos cite to Mississippi Code Annotated Section 9-13-32 (Rev. 2002), arguing that they had a statutory right to provide their own court reporter to transcribe the proceeding when the court did not provide its own official court reporter. Section 9-13-32 states:
Any attorney of record in any cause pending in a court which does not provide an official court reporter, may, in the discretion of such attorney, record or have recorded any court proceeding in such cause by mechanical means or stenographically. Any expenses incident thereto shall be borne by the party or parties represented by such attorney of record. The record of the court pro *1184 ceeding shall be used for impeachment purposes only.
Miss.Code. Ann. § 9-13-82.[4]
¶ 33. In 1975 in Newell v. State, our supreme court elaborated and declared that “[t]he inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of the separation of power and the vesting of the judicial powers in the courts.” Newell v. State, 308 So.2d 71, 76 (Miss.1975). In an order entered on May 26, 1981, the Supreme Court of Mississippi, based on its constitutional powers as discussed in Newell, adopted the original Mississippi Rules of Civil Procedure, “any and all statutes and court rules previously adopted to the contrary notwithstanding.” The court added that “in the event of a conflict between these rules and any statute or court rule previously adopted!,] these rules shall control.
¶ 34. Mississippi Rule of Civil Procedure 78 provides that a court has the discretion to dispense entirely with oral argument on a motion, and can rule based only upon the brief written statements of reasons in support and in opposition to the motion. M.R.C.P. 78. Our court has stated that “[i]f a hearing is not even necessary to make a decision on a motion for summary judgment, then transcription of that hearing would be inessential, as well.” Hosey v. Mediamolle, 963 So.2d 1267, 1270 (¶ 8) (Miss.Ct.App.2007).
¶ 35. We find no merit in the Palermos’ claim that they had a statutory right to transcribe the summary-judgment hearing. Furthermore, there is “no applicable rule justifying the adoption of such a mandatory transcription rule for dispositive motion hearings.” Id. Therefore, the judge did not abuse his discretion in denying the Palmeros’ request for their own court reporter.
¶ 36. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. The Palermos do not address the breach-of-warranty claim on appeal.

. An allograft is a body part or tissue of another human being.

. "[T]he supreme court [has] stated that before a trial court excludes evidence for a transgression in discovery, it should consider: (1) the explanation for the transgression; (2) the importance of the testimony; (3) the need for time to prepare to meet the testimony; and (4) the possibility of a continuance.” Moore v. Delta Reg’l Med. Ctr., 23 So.3d 541, 546 (¶ 17) (Miss.Ct.App.2009) (citing Miss. Power & Light Co. v. Lumpkin, 725 So.2d 721, 733-34 (¶ 60) (Miss.1998)).

. The only published reference to this statute may be found in an attorney general’s opin- ■ ion, which stated that the statute was designed for justice and municipal courts, which have no official court reporters provided by statute. Miss. Att’y Gen. Op., 2011-00161, 2011 WL 2883607, Patch (June 10, 2011).