605 So.2d 805 (1992)
Matilda BARNER
v.
Douglas E. GORMAN, M.D.
No. 90-CA-914.
Supreme Court of Mississippi.
August 12, 1992.
*806 William L. Bambach, Columbus, for appellant.
Stephen P. Kruger, Upshaw, Williams, Biggers, Page & Kruger, Claire M. Porter, Heidelberg & Woodliff, Jackson, for appellee.
EN BANC.
PITTMAN, Justice, for the Court:
Matilda Barner brought action against Dr. Douglas E. Gorman, her plastic surgeon, based on his treatment of a scar on her neck. Barner appeals a summary judgment granted by the Circuit Court of Hinds County, First Judicial District, in favor of Dr. Gorman. Today, we find that a dispute of fact remains as to whether Barner gave informed consent prior to her surgery. The summary judgment is reversed, and this cause is remanded for jury determination of informed consent.

I.
In April of 1986, Matilda Barner of Columbus, Mississippi, was involved in a motor vehicle accident and sustained a ruptured cervical disk. Following the accident, she underwent surgery for the removal of the disk anteriorly. The operation left Barner with a keloid scar approximately 7 cm. long and 1 cm. wide running vertically along the front of her neck.
Barner was referred to Dr. Douglas Gorman, a board certified specialist in plastic and reconstructive surgery practicing in Jackson, for treatment of the scar. Barner was first examined by Dr. Gorman on August 13, 1987, when he noted the hypertrophic blemish caused by the original disk removal surgery. Dr. Gorman discussed the options of treating the scar with kenalog injections or performing reconstructive surgery followed by kenalog treatments. Barner chose to have reconstructive surgery.
Barner checked into Hinds General Hospital on the morning of September 4, 1987. She signed a CONSENT TO OPERATION, ANESTHETIC AND OTHER MEDICAL SERVICES form. The document was also signed by C. Lloyd, LPN. That document contained the following language:
5. The nature and purpose of the operation, possible alternative methods or treatment, the risks involved, and the possibility of complications have been explained to me. No guarantee or assurance has been given by anyone as to the results that may be obtained.
The operation record reveals that Dr. Gorman attempted to reconstruct the 7-8 cm. keloid scar by using 3 Z-plasties and orienting the blemish so that it ran more along the creases of Barner's skin. This wound reconstruction procedure was completed in approximately two hours. Barner was discharged that afternoon.
Dr. Gorman later removed Barner's sutures and began kenalog treatments to counteract keloid scarring. Instead of the small scar previously on her neck, Barner had a massive keloid scar along the length of the front of her neck. After three kenalog treatments, Barner decided to terminate her relation with Dr. Gorman.
Barner subsequently filed this action against Dr. Gorman. To support his summary judgment motion, Dr. Gorman submitted an affidavit of Dr. Heber C. Ethridge, a board certified plastic and reconstructive surgeon practicing in Jackson, Mississippi, wherein Dr. Ethridge stated that the treatment of Barner had been appropriate. Dr. Ethridge further stated Barner's keloid scarring was not "caused nor contributed to by any action or omission of Dr. Gorman" and was a "natural consequence".
Dr. Gorman also provided an affidavit himself stating that he had told Barner that she would always have a noticeable scar present on her neck and that it was difficult to determine the degree of permanency. He stated that he specifically advised her about the potential of recurrent *807 hypertrophy and made no guarantees as to the results of the procedure. In his affidavit, Dr. Gorman stated, "I complied with the standard of care for minimally competent plastic and reconstructive surgeons," and "[T]he treatment of Ms. Barner ... was appropriate." He claimed, by affidavit, that Barner's keloid scarring was not "caused nor contributed to" by his treatment but "developed as a natural consequence".
In a letter from Barner's expert, Dr. Joseph Stephens, III, a board certified plastic and reconstructive surgeon practicing in Arlington, Texas, Dr. Stephens acknowledged that Dr. Gorman's treatment of Barner appeared to be appropriate. Dr. Stephens added, "I find it hard to believe that the risk of recurrence of a similar scar would not be discussed at some length with a black patient as it is well known that blacks do have increased risk of scar hypertrophy or keloid scarring." In a later affidavit, Dr. Stephens stated that the standard of care which a competent plastic surgeon with a patient such as Barner should include "a discussion by the surgeon of the possibility of recurrence of the scar after surgery".
Barner submitted an affidavit in opposition to the summary judgment motion explaining that Dr. Gorman "told me he could make the scar on my neck go away". Barner's sworn statement indicates, "Dr. Gorman did not at this time or at any time thereafter explain the likelihood that even after the surgery I would probably have a permanent, disfiguring scar." Barner's sworn statement adds that Dr. Gorman never offered her, at any time, pertinent information regarding the surgery or treatment to allow her to make an informed decision. Barner stated, "Dr. Gorman never told me that I had predisposition to form keloid tissue, and I did not know this fact. Dr. Gorman never disclosed to me that a disfiguring scar would probably remain." Barner claimed in the affidavit that Dr. Gorman never discussed alternative procedures or risks of the surgery and that no one explained the consent form to her. Barner concluded, "If Dr. Gorman had advised me that in all probability a disfiguring scar would still be there after the surgery, I would not have had the surgery." and "If Dr. Gorman had made the proper disclosure, I would have made a decision to decline surgery."
The trial court granted Dr. Gorman's summary judgment motion.

II.
Dispute of material fact exists in the case sub judice regarding Barner's alleged informed consent, and summary judgment was error.
Barner argues on appeal that Dr. Gorman failed to inform her that the results of the reconstructive surgery could not be guaranteed and failed to inform her that further keloid scarring could occur from this second surgical procedure. She asserts that if this information had been disclosed, she would have foregone the reconstructive surgery. Moreover, Barner suggests that summary judgment was inappropriate to resolve this cause in light of the contradictory nature of the parties' evidence.
Dr. Gorman states that he specifically informed Barner of the risks of recurrent keloid scarring which attend the reconstructive process and that he did not guarantee the results of the surgical procedure. He suggests that the CONSENT TO OPERATION, ANESTHETIC AND OTHER MEDICAL SERVICES establishes his disclosure to Barner and provides ample evidence to support the summary judgment below.
While there is jurisprudence in other jurisdictions to the effect that disclosure is not required where the risk is either known to the patient or is so obvious as to justify presumption of such knowledge, Young v. Group Health Cooperative, 85 Wash.2d 332, 534 P.2d 1349 (1975), this Court has not recognized such a rule. A physician must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment. Hudson v. Parvin, 582 So.2d 403, 410 (Miss. 1991) (quoting Phillips v. Hull, 516 So.2d 488, *808 493 (Miss. 1987)). Dr. Gorman was required to provide disclosure to Barner of the risks of recurrent keloid scarring from the plastic surgery.
Signed waivers do not always determine a patient's consent. Certainly, waivers executed by the patient can be helpful. A form signed by the patient does not always indicate that the patient's consent was in fact informed consent. In the absence of any documentary or verbal evidence substantiating the physician's claim of having obtained his patient's "informed" consent for the operation, this Court cannot find that the physician is entitled to summary judgment as a matter of law. Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1365 (Miss. 1990); Phillips, 516 So.2d at 494.
Dr. Gorman's suggestion in the cause at bar that consent to the reconstructive surgery is evidenced by the CONSENT TO OPERATION, ANESTHETIC AND OTHER MEDICAL SERVICES is true, but the evidence is not conclusive. Pursuant to Palmer and Phillips, a simple signed waiver on a form is not always adequate.
This Court has reviewed the allegations and evidence of the parties in an effort to resolve the question of whether Dr. Gorman disclosed the risks to Barner and whether Barner then consented to the operation and finds contradictory assertions. A motion for summary judgment should not be granted when movant and respondent have sworn to different versions of the issue before the court. See Dennis v. Searle, 457 So.2d 941 (Miss. 1984). Summary judgment is no substitute for trial regarding disputed issues of fact. See Dethlefs v. Beau Maison Development Corp., 458 So.2d 714 (Miss. 1984).
Since summary judgment was granted, we review the arguments and authorities in the light most favorable to Barner. A close question arises on the issue of consent. This Court notes the methods by which a patient can be informed of the risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment are limitless. Printed brochures, extensive discussions between a physician and a patient and the patient's family, are just possibilities for disclosure. A simple waiver form with boilerplate language applicable to any surgical procedure may not be adequate. This Court finds that disclosure to a patient should be specific to that patient's treatment. Such specific disclosure is not now documented in the controversy at bar. Additionally, this Court finds that consent gained by an LPN may not be adequate. Consent should be obtained by the physician where possible. Certainly, a waiver secured immediately prior to surgery by an LPN as in the instant case, may not assure informed consent. In sum, the documentation of consent provided by Dr. Gorman, a generic waiver form witnessed by an LPN, does not necessarily establish informed consent, and the case sub judice is remanded for trial on the informed consent issue.
In all situations where surgery or treatment is unique, the discussion and the consent form should be unique and specific to the patient and the treatment. We acknowledge that a simple procedure, for example an appendectomy, may be consented to by a "form", but the patient must be fully informed and exercise, where possible, a knowing consent. Certainly, where there is an ongoing doctor-patient relationship including office visits and a review of alternative procedures or treatments, the patient is entitled to disclosure by the doctor with specific information amounting to more than protective boilerplate. Because the waiver form may be inadequate and because dispute as to whether Barner was informed of pertinent risks exists in the present case, the summary judgment of the lower court regarding informed consent was error.

III.
We affirm the lower court's summary judgment on the issue of medical negligence. To prove a prima facie case of medical malpractice, a plaintiff must prove the existence of a duty on the part of the physician to conform to the specific standard of conduct, the applicable standard of care, the failure to perform to that standard, *809 that the breach of duty by the physician was the proximate cause of the plaintiff's injury, and that damages to plaintiff have resulted. Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss. 1987). When proving these elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries. Latham v. Haynes, 495 So.2d 453 (Miss. 1986).
This showing was not made by Barner. Her expert evidence consisted of a letter and an affidavit of Dr. Stephens. Dr. Stephens' correspondence indicated that Dr. Gorman did not deviate from the minimal standard of care and that Dr. Gorman's treatment was appropriate. The affidavit of Dr. Stephens failed to address the issue of medical negligence in any respect. The majority today concludes that Barner never presented the lower court with any expert evidence to establish a claim of negligence. In the absence of such evidence, this Court has concluded that summary judgment is indeed appropriate. See Phillips, 516 So.2d at 491; see also Walker v. Skiwski, 529 So.2d 184 (Miss. 1988).
Summary judgment was appropriate in the cause at bar on the issue of medical negligence. There was no dispute of fact regarding the surgical procedure undertaken, and Barner did not present the requisite expert testimony necessary to sustain a medical malpractice claim based on negligence.

IV.
Finding that a genuine dispute of material fact remains as whether Barner provided informed consent, this Court reverses the summary judgment granted by the lower court and remands for jury consideration of the issue.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.