ROBERTS, J.,
for the Court.
¶ 1. Abner K. Northrop, Jr., sued Memorial Hospital at Gulfport (MHG), anesthesiologist Dr. Thomas LeTard, and nurse anesthetists Davis Hutto and Stanley Turner for medical malpractice due to surgical *389 complications that will be discussed in greater detail below. MHG, Dr. LeTard, Hutto, and Turner[1] successfully moved for summary judgment. Northrop appeals and claims the circuit court erred when it granted the Appellees’ motion for summary judgment. After careful consideration, we agree. Accordingly, we reverse the judgment of the circuit court and remand this matter for proceedings consistent with this opinion.
FACTS
¶ 2. At approximately 8:00 a.m. on March 2, 1999, Northrop underwent surgery at MHG. Dr. LeTard administered anesthesia. Northrop’s arms were extended and secured to arm boards. Hutto placed a “Bair Hugger” over Northrop and placed a blanket over the Bair Hugger.[2] Hutto also taped the blanket to the arm boards. At some point during the surgical procedure, Dr. LeTard left the operating room. Hutto was assigned to monitor Northrop’s anesthesia.
¶ 3. At 11:05 a.m., Turner relieved Hut-to. Northrop’s surgery ended shortly af-terwards. When Turner removed the blanket and the Bair Hugger from Northrop’s arms, Turner discovered that the intravenous line (IV) in Northrop’s left arm had “extravasated” and that Northrop had developed injuries due to a condition known as “compartment syndrome.”[3] While Northrop was still under anesthesia in the operating room, Dr. Alton Dauterive, a vascular surgeon, performed an emergency procedure termed a “fascioto-my” to relieve the pressure in Northrop’s left arm. Four days later, Dr. Dauterive performed a skin graft in which he removed a section of skin from Northrop’s thigh and placed it on Northrop’s left arm.
PROCEDURAL HISTORY
¶ 4. Northrop sued the Appellees in the Harrison County Circuit Court. Northrop claimed the Appellees were negligent in failing to properly monitor his arm and the IV site. The Appellees denied that they were negligent. Northrop designated Dr. Felipe Urdaneta as his expert witness. Dr. Urdaneta testified by deposition on October 15, 2004.
¶ 5. MHG, Hutto, and Turner filed a motion for summary judgment. Dr. Le-Tard, represented by separate counsel, filed a joinder to that motion. The Appel-lees argued that summary judgment was appropriate because Dr. Urdaneta could not testify as to what caused the extrava-sation or when the extravasation occurred. Said differently, the Appellees claimed there was no genuine issue of material fact whether they breached the relevant standard of care. The circuit court agreed and held that there was no genuine issue of material fact related to whether any assumed breach was the proximate cause of Northrop’s damages. Northrop appeals.
*390 WHETHER THE CIRCUIT COURT ERRED WHEN IT GRANTED THE AP-PELLEES’ MOTION FOR SUMMARY JUDGMENT.
¶ 6. Northrop claims the circuit court erred when it granted summary judgment. This Court conducts a de novo review of a circuit court’s decision to grant a motion for summary judgment. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993). Viewing the evidence in the light most favorable to the non-moving party, summary judgment is appropriate if “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there'is no genuine issue as to any material fact.” M.R.C.P. 56(c); see Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983). For summary judgment purposes, “[a] fact is material if it tends to resolve any of the issues properly raised by the parties.” Webb v. Jackson, 583 So.2d 946, 949 (Miss.1991) (citation and internal quotations omitted).
¶ 7. Northrop claimed that the Appellees committed medical malpractice. To prove a prima facie case of medical malpractice, a plaintiff must demonstrate four key elements: (1) a duty to conform to a standard of care; (2) a breach of that duty; (3) proximate cause; and (4) as a result, the plaintiff suffered damages. Barner v. Gorman, 605 So.2d 805, 808-09 (Miss.1992). Generally, expert testimony is necessary to demonstrate these elements. Palmer v. Biloxi Reg’l Med. Ctr., 564 So.2d 1346, 1355 (Miss.1990).
1. Duty
¶ 8. Mississippi physicians have a duty to exercise reasonable and ordinary patient care. Id. at 1354. An expert must “identify and articulate” the standard of care with which a defendant allegedly failed to comply. Id. at 1355. According to Dr. Urdaneta, the standard of care was constant' vigilance and monitoring of anesthesia. Dr. Urdaneta’s testimony indicated that vigilance concerning an unconscious patient is particularly important because the patient cannot communicate the painful side effects of extra-vasation and compartment syndrome.
¶ 9. Dr. Urdaneta testified that watching the IV drip is only part of constant overall vigilance, and monitoring vital signs alone is not sufficient when, as with Northrop, there are multiple IV lines. Dr. Urdaneta testified that basic vigilance included “actually looking at the extremity [and] feeling the extremity.” Considered in the light most favorable to Northrop, Dr. Ur-daneta’s testimony established that the Appellees bore the duty to exercise overall vigilance and monitoring of the IV lines and the extremity in which the lines were inserted. Further, Dr. Urdaneta’s testimony demonstrated that the duty of vigilance included visual inspection of the IV site and the extremity and feeling the extremity to check for increased pressure due to extravasation.
2. Breach
¶ 10. The Appellees argue that Northrop failed to demonstrate a genuine issue of material fact whether they breached the standard of care. We disagree. It is undisputed that no one observed Northrop’s arm during the entire procedure because it was covered by the Bair Hugger and the blanket. Dr. Urdaneta testified that the Appellees bi-eached the standard of constant vigilance and monitoring of anesthesia when they failed to monitor the IV fluids they administered. Though Dr. Urdaneta testified that there is no standard as to how often or at what intervals one should visualize or feel an extremity, when considered in the light most favorable to Northrop, Dr. Urdaneta’s testimony demonstrated that the Appellees should *391 have visualized and felt Northrop’s arm at some point during the procedure.
¶ 11. The Appellees submit that Dr. Urdaneta testified that the standard of care did not require actually lifting the Bair Hugger and the blanket to observe Northrop’s arm. However, that is not an accurate characterization of Dr. Urdane-ta’s deposition testimony. Dr. Urdaneta testified that lifting a Bair Hugger and a blanket was not necessary when a patient’s arms were at his side. Dr. Urdaneta explained that under those circumstances, lifting the Bail’ Hugger and blanket would violate what he termed the “sterile field.” However, Northrop’s arms were extended away from his body. Dr. Urdaneta testified that it is not a violation of the sterile field to lift the Bair Hugger and the blanket when a patient’s arms are extended.
3. Proximate Cause
¶ 12. One may prove proximate cause by establishing a causal connection between an injury and a defendant’s actions. Palmer, 564 So.2d at 1365. Stated differently, “proximate cause arises when the omission of a duty contributes to cause the injury.” Clayton v. Thompson, 475 So.2d 439, 445 (Miss.1985). The circuit court found that there was no genuine issue of a material fact related to whether any breach of duty by the Appellees was the proximate cause of Northrop’s damages. We disagree.
¶ 13. The circuit court based its finding on the concept that no one could determine exactly when extravasation occurred. Dr. Urdaneta testified that he could not determine exactly when the extravasation occurred because no one measured the compartment pressure in Northrop’s arm. Because no one measured the compartment pressure, there was no way to determine how much fluid extravasated into Northrop’s arm and, by extension, no way to determine exactly when the extravasation began. It is undisputed that extrava-sation can happen suddenly and without warning. However, the issue is not whether the Appellees’ failure to monitor caused the extravasation. The appropriate issue is whether the Appellees’ failure to monitor allowed the extravasation to cause injuries and damages from the compartment syndrome, which would not have occurred, but for the Appellees’ breach of duty. There is no dispute that Northrop was injured because of the compartment syndrome, which was caused by the extravasation.
¶ 14. We are required to examine the evidence in the light most favorable to Northrop. Viewing Dr. Urdaneta’s testimony in that light, Northrop demonstrated that, but for the Appellees’ failure to monitor the IV fluids, Northrop’s injuries due to compartment syndrome would have been avoided or at least mitigated. Suffice it to say, reasonable jurors could differ on the factual questions at issue. Under the circumstances, summary judgment is inappropriate. Russell v. Orr, 700 So.2d 619, 624(1117) (Miss.1997). We are mindful of the following language from the Mississippi Supreme Court: “When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt.” Brown, 444 So.2d at 362.
¶ 15. Having found that Northrop demonstrated a genuine issue of material fact incident to all prima facie elements of a medical malpractice claim, we find that the circuit court erred when it granted the Appellees’ motion for summary judgment. Accordingly, we reverse the judgment of the circuit court and remand this matter for proceedings consistent with this opinion.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT *392 COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J. ISHEE, J., NOT PARTICIPATING.

. We generally use specific names for litigants rather than generic terms such as ''Appel-lees.” However, due to the tedious nature that would involve referring to MHG, Dr. LeTard, Hutto, and Turner, individually, we will make an exception.

. The Bair Hugger and the blanket were intended to keep Northrop warm during the procedure.

.According to Dr. Felipe Urdaneta, ‘‘extrava-sation” occurs when an intravenously administered fluid or a drug ‘‘leaks outside the vessel.” Dr. Urdaneta provided several articles from medical journals. "Compartment syndrome” develops due to "increase[d] ... pressure within a muscle compartment to the extent that blood flow is compromised.” Mitchell D. Tobias, M.D., et al., Compartment Syndrome After Pressurized Infusion, British Journal of Anesthesia, Vol. 67 (1991).