ROBERTS, J., for the Court:
¶ 1. In December 2007, Lisa Posey filed a complaint against Dr. Nancy Burrow and Health Management Associates d/b/a Rankin Medical Center as employer of Dr. Burrow. Then, on April 3, 2008, Posey filed an amended complaint alleging medical negligence and malpractice on the part of Dr. Burrow for her failure to diagnose a cavernous malformation, resulting in injury to Posey. Dr. Burrow filed a motion for summary judgment on November 30, 2010, and a hearing in the Rankin County Circuit Court was held on February 7, 2011. The circuit court entered an order on February 14, 2011, granting Dr. Burrow’s motion for summary judgment. Po-sey now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. In June 2004, Dr. Thomas Ellingson ordered an MRI to be conducted on Posey *906 to determine if there were any possibilities of pituitary abnormalities, including a pituitary tumor. Dr. Burrow, a radiologist, reviewed the results of Posey’s MRI on June 7, 2004, and found the MRI to be essentially normal and “no evidence of pituitary abnormalities.” Over a year later, in October 2005, Posey had a seizure. As a result, Posey fell and injured her head, face, shoulders, knees, and teeth. She underwent another MRI and a CT scan, and it was discovered that Posey had a cavernous malformation in her right temporal area. A month later, Posey underwent a “craniotomy for cavernous malformation resection with intraoperative electrocort-iography ane (sic) neuronavigation.” In September 2007, Posey visited Dr. John Lancon, and Dr. Lancon informed her that the cavernous malformations were present on multiple images on her June 2004 MRI.
¶ 3. Posey filed her first complaint in December 2007 and amended her complaint in April 2008. In her complaint, Posey alleged the seizure and resulting injuries due to the fall were caused by the cavernous malformations, and but for Dr. Burrow’s failure to diagnose the cavernous malformations and provide appropriate treatment, the seizure and injuries would not have occurred. Posey sought damages for her physical injuries, pain and suffering, medical expenses, lost past and future wages, and any other damages allowable by law. On March 16, 2009, Posey filed her designation of expert witnesses, listing seven expert witnesses.
¶ 4. Dr. Burrow filed a motion for summary judgment in the circuit court alleging that Posey had failed to meet her burden of proof to survive a motion for summary judgment because there was no “sworn, competent expert testimony articulating the content of the standard of care and opining that Dr. Burrow deviated from that standard of care causing, in whole or in part, the damages claimed.” Dr. Burrow also stated that the expert testimony must also show that the failure to adhere to the standard of care was the proximate cause or proximate contributing cause of Posey’s injuries and that Posey failed to provide any sworn expert proof to support her claims of medical negligence and malpractice. Dr. Burrow also attached her affidavit stating:
I am familiar with the standard of care possessed and exercised by reasonably prudent, minimally competent physicians, who specialize in radiology.... [I]n terms of reasonable medical probability, ... I complied with the standard of care applicable to reasonably prudent minimally competent physicians under like or similar circumstances, at all times during my involvement in the treatment and care of [Posey]. It is further my opinion that my involvement in the medical care of [Posey] in no way caused or contributed to the injuries [Posey] is currently alleging.
Posey filed no affidavits with the circuit court. She only submitted two letters from Dr. Lancon. The circuit court held a hearing on the motion on February 7, 2011, and issued its final judgment in favor of Dr. Burrow on February 14, 2011. In its final judgment, the circuit court found that Posey did not provide “sworn, competent expert testimony to establish the element of proximate causation.” Additionally, Posey “lack[ed] the requisite testimony establishing that had the cavernous malformation been disclosed to [her], or her physician, the standard of care would have required treatment that would have prevented her initial seizure and damages claimed in this matter. Consequently, [Posey] ... failed to created a genuine issue of material fact....”
¶ 5. On appeal, Posey argues that the circuit court erred in granting summary *907 judgment in favor of Dr. Burrow. Finding no error, we affirm.
ANALYSIS
¶ 6. The standard of review applied when reviewing a circuit court’s decision to grant or deny a motion for summary judgment is de novo, and a motion for summary judgment is appropriately granted only when “no genuine issue of material fact exists.” PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 49 (¶ 8) (Miss.2003) (citations omitted). “The moving party has the burden of demonstrating that no genuine issue of material fact exists within the ‘pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.’ ” Id. (quoting M.R.C.P. 56(c)).
¶ 7. In her brief, Posey argues that she provided proof of each element of her medical negligence and malpractice claim and established a prima facie case of medical negligence-and-malpractice sufficient to withstand a motion for summary judgment. To support her claim that there was a genuine issue of material fact, Posey relies on two letters from Dr. Lancon stating that Posey’s 2004 MRI showed the cavernous malformations and that the standard of care “would be that a reasonably trained, competent radiologist who interprets MRI brain studies ... should be capable of identifying a probable cavernous brain malformation.” Further, Dr. Lancon opined that “[i]t is reasonably possible that the cavernous malformation cause the seizure .... [, but] the only way to prove this would be to capture a seizure at its moment of onset while performing an EEG [electroencephalography], which is impractical in many cases.” Dr. Lancon found that the standard of treatment in the medical community would have been to discuss the pros and cons of long-term anticonvulsant medication versus a surgical option. He also stated that “[a]t minimum, the patient should be notified of the diagnosis and counseled with respect to [her treatment] options....” It is of extreme importance to note that neither of Dr. Lancon’s letters were sworn to.
¶ 8. Mississippi Rule of Civil Procedure 56(e) provides that:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
In a claim for medical malpractice, “expert testimony must be used.” Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992). Further, “[n]ot only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (citation omitted). In Langley ex rel Langley v. Miles, 956 So.2d 970, 976 (¶ 17) (Miss.Ct.App.2006) (citing Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987)), this Court held that “[u]nless the matter is within the common knowledge of laypersons, to establish a prima facie case of medical negligence against a physician, a plaintiff must present competent expert testimony as to the applicable standard of care, breach, and proximate causation.” In Langley, this Court found that Lee County Circuit Court did not err in granting summary judgment because no sworn medical evidence was produced, and “a sworn affidavit of an expert witness attesting to the standard of care and that the defendants’ treatment of Langley [, the plaintiff,] *908 breached the standard of care” was required. Id.
¶ 9. Here, Posey failed to produce an affidavit or any other evidence except Dr. Lancon’s letters, which are not sworn affidavits, and a portion of Dr. Burrow’s deposition. Dr. Burrow provided a sworn-to affidavit stating that she did in fact comply with the standard of care and was not a contributing cause of Posey’s injuries. The evidence Posey submitted alone is insufficient to establish a prima facie case of medical malpractice; therefore, Po-sey failed to dispute Dr. Burrow’s claims in her affidavit and failed to show a genuine issue of material fact.
¶ 10. We find that the circuit court did not err in granting Dr. Burrow’s motion for summary judgment, and this issue is without merit.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.