# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01301-COA

**JERRY DON WEBB AND JOYCE WEBB**                                    **APPELLANTS**

**v.**

**FORREST GENERAL HOSPITAL, DR. THAD**                              **APPELLEES**
**F. WAITES, HATTIESBURG CLINIC P.A.**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2018 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DANIEL OWEN LOFTON |
| ATTORNEYS FOR APPELLEES: | MATTHEW D. MILLER |
| | NICHOLAS KANE THOMPSON |
| | J. ROBERT RAMSAY |
| | JOHN BURLEY HOWELL III |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 04/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Jerry Don Webb and Joyce Webb appeal from the grant of summary judgment dismissing their medical-malpractice suit against Forrest General Hospital (Forrest General), Dr. Thad F. Waites, and Hattiesburg Clinic P.A. (the Clinic)  The trial court held that the Webbs had not presented sufficient proof of causation to defeat motions for summary judgment.  The court also denied the Webbs' motion to extend the discovery deadlines to depose Dr. Waites's expert, finding that such additional discovery would not lead to evidence establishing causation.  Following these holdings, the Webbs appealed to this Court.  Having

reviewed the record, the issues raised, and relevant precedent, we affirm.

## FACTUAL BACKGROUND

¶2.     On March 26, 2015, Mr. Webb visited Forrest General's emergency department with complaints of shortness of breath and a persistent cough. He was diagnosed with atrial fibrillation. Efforts to regulate his heartbeat through medication were unsuccessful. He was admitted, and the next day, Dr. Lawrence Leader and Dr. Waites[1] recommended the use of the transesophageal echocardiogram (TEE) to evaluate Mr. Webb's atrial fibrillation. In a TEE procedure, a probe is guided through the mouth and down the throat to the esophagus to allow the doctor to take sonic images of the heart.

¶3.     According to the medical records, Mr. Webb was placed under conscious sedation and underwent the TEE, which Dr. Waites performed. However, the probe was passed to the mid esophagus with difficulty. Mr. Webb was agitated and coughing during the limited procedure. Dr. Waites made multiple attempts to advance the probe but still experienced difficulty. The parties dispute the events that transpired thereafter, during the TEE procedure.

¶4.     Dr. Waites contends that during the TEE procedure, Mr. Webb coughed so hard that he went from a supine position to a sitting position. Dr. Waites states that when he withdrew the probe, he noticed a spot of blood on it. But when he resumed the procedure, Dr. Waites successfully obtained the echocardiogram and removed the probe. According to Mr. Webb,

---

[1] In their joint answer to the complaint, Dr. Waites and the Clinic admitted Dr. Waites was a physician-employee-member of the Clinic. The Clinic further admitted it was liable for Dr. Waites's actions.

2

the log of the procedure did not document Mr. Webb's coughing so hard that he sat up. The procedure log did not report a spot of blood upon suction, but "copious bloody secretions" were noted.

¶5.    After the TEE, Mr. Webb underwent a cardioversion (i.e., electric shocks while a patient is under sedation) to shock his heart back into rhythm. Mr. Webb suffered no complications with the cardioversion. Dr. Waites asserts that when Mr. Webb returned to the hospital floor, he was not bleeding, he was talking normally, and he had no pain.

¶6.    Although not noted in the medical records or procedure log, Mr. Webb contends that he told the nurses and hospital staff that "he felt a flap of skin in his throat." Thereafter, he asserted that "his throat began to swell and he coughed up large drinking cup's worth of blood" while he waited for two hours or more for medical treatment.

¶7.    According to Mr. Webb's medical records, during the TEE, Mr. Webb experienced a "traumatic pyriform sinus perforation (rare complication of TEE) with significant bleeding and tearing of a pharyngeal vessel off the external carotid with continued bleeding and hemoptysis." Mr. Webb contends that due to the seriousness of the perforation and tear, he experienced respiratory failure. He spent eight days in the intensive care unit on life- support systems so that the perforation could heal.

**PROCEDURAL HISTORY**

*A.    Initial Filings and Discovery*

¶8.    The Webbs filed their complaint on January 25, 2017, against Forrest General, Dr. Waites, the Clinic, and Philips Ultrasound Inc. Mr. Webb alleged that his injured pyriform

sinus was the result of the negligence of Forrest General, Dr. Waites, and the Clinic. Philips Ultrasound Inc., the manufacturer of the TEE probe, was sued under the Mississippi Products Liability Act.[2] Miss. Code Ann. § 11-1-63 (Rev. 2014). The Webbs requested damages for medical expenses, permanent physical disability, and loss of quality of life, and they requested punitive damages. Thereafter, the Webbs amended their complaint to allege damages for Mrs. Webb's loss of consortium.

¶9. Between January and September of 2017, the parties exchanged written discovery. On September 20, 2017, the trial court entered an agreed scheduling order by which the Webbs were to designate all experts by March 30, 2018; Dr. Waites and Forrest General would designate experts by April 20, 2018; and discovery would end on May 31, 2018. There was no deadline for the filing of dispositive motions. The order required that "motions for extensions of any of these deadlines should be filed prior to the expiration deadline in question."

¶10. On November 30, 2017, the parties took the depositions of the Webbs and Dr. Waites. Between November 2017 and May 2018, no other depositions were noticed or taken.

### B. Plaintiffs' Expert Designation

¶11. On March 30, 2018, the Webbs filed their expert designation, which included the opinions of cardiologist Dr. James Rellas. According to the affidavit of Dr. Rellas, Dr. Waites breached the requisite standard of care. Dr. Rellas stated that while Mr. Webb underwent a TEE for appropriate medical reasons, the combination of a difficult entry into

---

[2] Phillips Ultrasound Inc. filed a motion for summary judgment on May 29, 2018, which was granted on August 8, 2018. Phillips Ultrasound Inc. is not a party to this appeal.

the esophagus and blood on the probe was "worrisome." Dr. Rellas had reviewed Dr. Waites's deposition in which Dr. Waites said that he had difficulty placing the tube in Mr. Webb's esophagus, which Dr. Waites attributed to cervical osteophytes (i.e., bone spurs in the neck). Dr. Waites also stated that Mr. Webb coughed and sat up in discomfort during the procedure. Dr. Rellas opined that at that point, Dr. Waites needed to "step back and reassess the patient before completing the procedure." In Dr. Rellas's opinion, had Dr. Waites obtained an ENT consult before proceeding, that step "may have decreased his [Mr. Webb's] additional 8 days in the hospital, his additional morbidity including prolonged intubation and his well being in the months to come."

¶12. Dr. Rellas did not identify any Forrest General employee who had failed to properly treat or care for Mr. Webb. The Webbs did not designate any nursing or administrative experts to testify against Forrest General.

### C. Defendants' Expert Designations

¶13. Forrest General, Dr. Waites, and the Clinic, failed to designate experts by the April 20, 2018 deadline. But on April 25, 2018, Dr. Waites and the Clinic filed a motion for an extension of time to designate experts. The next day, the court granted the motion, giving not only Dr. Waites and the Clinic an extension, but Forrest General as well.[3] All the defendants then had until May 7, 2018, to designate their experts.

¶14. On May 3, 2018, Dr. Waites and the Clinic designated Dr. Michael L. Main and Dr. Waites, himself, as their experts. Dr. Main, a cardiologist, was expected to testify that Dr.

---

[3] On May 1, 2017, Forrest General filed its joinder to Dr. Waites's motion for an extension.

Waites did not deviate from the standard of care in the course of the TEE procedure. Dr. Main opined that "[a]t the time of his transfer from the TEE lab, there was no reason for Dr. Waites or any cardiologist to believe Mr. Webb's severe cough was caused by the inadvertent advancement of the probe into the pyriform sinus." Further, Dr. Main would testify that Mr. Webb's injury was not predictable but rather a rare but recognized potential complication of a TEE procedure. Designating himself as an expert, Dr. Waites said he did not deviate in any manner from the standard of care in the performance of the TEE procedure. Further, Dr. Waites was expected to testify that the difficulty he experienced was not unusual for patients of Mr. Webb's age.

¶15. On May 9, 2018, Forrest General designated Dr. Main and Dr. Waites as its experts as well and adopted the opinions given in Dr. Waites's designation.

### D. Motions for Summary Judgment

¶16. On May 11, 2018, Dr. Waites and the Clinic filed a motion for summary judgment, arguing that the Webbs did not present expert testimony to support the elements of medical negligence, especially causation, and that Mrs. Webb's derivative loss-of-consortium claim also failed.

¶17. On May 18, 2018, Forrest General filed a motion for summary judgment and argued that the Webbs had failed to present sufficient expert evidence to support their claims against it. Additionally, Forrest General argued that because Dr. Waites was not an employee, it was not vicariously liable for any negligence that may be attributed to Dr. Waites.[4]

---

[4] Although Forrest General had obtained an order preserving its sovereign-immunity defense through discovery, it did not raise immunity as a basis for summary judgment.

6

*E.    The Webbs' Response to the Motions for Summary Judgment*

¶18.    Before responding to the motions for summary judgment, the Webbs filed several motions, noticed several depositions, and sought to extend the discovery deadline:

1.    The Webbs noticed Mississippi Rule of Civil Procedure 30(b)(6) depositions of Forrest General and the Clinic, setting them for May 24, 2018. The next day, the Clinic filed a motion for a protective order on the basis that the notice had not specified any specific areas of inquiry and because Dr. Waites had been extensively deposed. Forrest General also filed a motion to quash its deposition. The court entered an order continuing the deposition dates because it could not schedule a hearing on the motions prior to May 24, 2018. The Webbs apparently never re-noticed the depositions and filed no motion to compel them.

2.    On May 25, 2018, the Webbs issued deposition subpoenas to two Forrest General employees: Mr. Webb's attending nurse, Forest Green, and Dwight Johnson, the Director of Patient Accounts for Forrest General. Green and Johnson failed to appear. The Webbs filed no motion for contempt or to compel their attendance.

3.    On June 1, 2018, the Webbs filed a motion to compel discovery responses from Forrest General and served a second set of discovery requests (requests for admissions and requests for production and interrogatories) on Forrest General. Forrest General responded that its responses were not misleading. The court denied the Webbs' motion to compel discovery responses because the court was not persuaded that the written discovery sought was relevant to the issue of causation or probative to the Webbs' alternative theory that the probe used in the procedure was overexposed to a disinfectant. The Webbs' second discovery requests were unanswered prior to the hearing on the motions for summary judgment.

4.    On May 18, 2018, the Webbs also filed a motion to extend the discovery and mediation deadline pursuant to Mississippi Rule of Civil Procedure 6(b). The only reason they stated as a basis for the motion was that they needed an additional sixty days to "depose and seek additional discovery regarding Defendant's proffered expert." The motion made no reference about needing time to do anything with respect to Forrest General.

7

¶19. On July 9, 2018, the Webbs finally responded to Dr. Waites and the Clinic's motion for summary judgment. The Webbs argued that there were genuine issues of material facts in dispute and that their expert, Dr. Rellas, had affirmatively sworn that Dr. Waites breached the requisite standard of care. The Webbs submitted a second affidavit of their expert, Dr. Rellas, who stated that Dr. Waites did not meet the standard of care in the treatment of Mr. Webb by (a) delaying triage for a patient with known complications (e.g., bleeding), (b) failing to consult with an ENT/or to change technique, and (c) failing to use a bite block that would allow the doctor to guide the probe and minimize trauma to the pyriform fossa and sinuses, which is often helpful during difficult cases. "This led to copious amounts of blood during the initial portion of the procedure." Finally, Dr. Rellas concluded "the initial bleeding in addition to the delay in triage of a patient who had documented swelling, coughing, discomfort, and bleeding in recovery [was] not the norm for medical care."

¶20. On July 16, 2018, the Webbs responded to Forrest General's motion for summary judgment. The Webbs argued that they could not determine the extent of Forrest General's liability until they could effectively discover the hospital's policies and procedures. But they filed no motion under Mississippi Rule of Civil Procedure 56(f) for time to conduct further discovery. Moreover, they argued that the hospital and its staff are also liable when performing "administrative" functions, which they claimed included a:

(a) delay triage for a patient with known complications;
(b) failure to independently discover the existence of a serious complication in a hospital patient;
(c) failure to record and verify which endoscope was used on the patient in question;
(d) failure to maintain attendance records of hospital staff;

8

(e)     failure to properly clean and maintain the device in question; and

(f)     failure to preserve evidence.

### F.     Hearing on Motions

¶21.   On July 17, 2018, the court heard arguments on the motions for summary judgment and the Webbs' motion for extension of time.  Dr. Waites and the Clinic argued that there was not one iota of proof that after Mr. Webb's coughing event—when the probe was at the level of the pharynx—damage would have been avoided with earlier triage.  In response, the Webbs argued that there were "hotly contested decisive facts" in dispute.  They further claimed that the doctrine of res ipsa loquitur applied because (1) Dr. Waites had exclusive and total control over the TEE probe during the performance of the medical test; (2) the puncturing of a pyriform sinus is rare; and (3) Mr. Webb was under three layers of anesthesia and/or sedatives at the time of the incident; therefore it was not physically possible for him to voluntarily or willfully contribute to his injury in any way.

¶22.   Forrest General adopted Dr. Waites and the Clinic's arguments regarding the lack of causation and the deficiency of the Webbs' expert opinion.  In response, the Webbs argued that their claims against Forrest General were underdeveloped because Forrest General had circumvented their efforts to depose the hospital's corporate representatives.  The Webbs told the court that Forrest General was at fault because of its delay in discovering Mr. Webb's injury.  During questioning by the court, the Webbs' counsel admitted that their expert had not addressed Forrest General's liability in his report:

> THE COURT:     What does your expert say in either one of those reports
> about the hospital's breach of duty?

9

MR. LOFTON:    He does not Your Honor, he does not specifically attribute -- he does not specifically define Forrest General's liability in this statement. This statement specifically defines the liability of Dr. Waites. I will admit that.

Webb's attorney indicated he did not want his expert to comment on the hospital's liability until he received the appropriate hospital policies. At this stage, the Webbs' counsel argued that all that was needed was a showing of material facts in dispute, to which the court responded:

THE COURT:    What matters is at this stage whether or not you have a qualified physician. And I believe Dr. Rellas is probably qualified; but at this stage, he's got to say that there's a standard of care. There's a duty to conform to that standard. Forrest General Hospital breached that standard, and here's the reason, and that the breach of the standard of care caused or contributed to Mr. Webb's injuries. Now, that's what we've got to have. . . . But, I mean, at this point in time, the designation for experts is over, and your doctor doesn't say that Forrest General Hospital did anything.

The Webbs argued that it was impossible to do an effective expert report because they had not been allowed to depose Forrest General and its employees. Forrest General responded that the Webbs did not ask for any depositions of Forrest General until all of the experts were designated.

¶23.   In arguing their Rule 6(b) motion to extend the discovery deadline, the Webbs stated that an extension was needed to depose Dr. Main regarding his expert opinion. They did not argue that they needed further discovery from Forrest General (i.e., the documents and depositions they claimed Forrest General denied them).

10

## G. Circuit Court's Rulings on Motions

¶24. On August 8, 2018, the court found that the Webbs had not met their burden on the element of causation and that res ipsa loquitur had no application to the facts of the case. It granted Dr. Waites and the Clinic's motion for summary judgment.

¶25. In a separate order, the court also granted Forrest General's motion for summary judgment. It found that no causation had been proved and that res ipsa loquitur was not applicable. The court also found that the Webbs alleged "administrative negligence claims" were, for the most part, medical negligence claims because the alleged breaches involved medical, nursing, or specialized judgment. As such, a medical expert's opinion as to a breach of a standard of care and causation was required. The Webbs had failed to provide such an opinion against Forrest General. The court added that the Webbs had not made a formal Rule 56(f) request for additional discovery or stated reasons why they could not present facts essential to justify their opposition to the motion. The Rule 6(b) motion that the Webbs filed to depose Dr. Waites's expert would do nothing to rehabilitate the Webbs' failure to prove causation against Forrest General as well as Dr. Waites.

¶26. In a separate order, the court further discussed and denied the Webbs' motion to continue the discovery deadlines. It found that the Webbs had failed to give sufficient reasons why allowing the Rule 30(b)(6) depositions to go forward would enable them to present facts essential to their opposition to the motions for summary judgment.

## H. The Appeal

¶27. On September 6, 2018, the Webbs appealed to this Court. They state their issues as

follows:

I.      Was Forrest General Hospital's refusal to submit to discovery in reliance on its pending motion for summary judgment sufficient grounds for this Court to determine that the trial court abused its discretion by not allowing a continuance under Rule 56(f) [Rule 6(b)] even for the completion of the deposition of the moving party, the 30(b)(6) representative?[5]

II.     Did the Defendant Dr. Waites sufficiently meet his burden of persuasion as to the presentment of material undisputed facts so as to trigger Mr. Webb's duty to produce significant proof regarding the existence of each essential element of his claim of medical negligence?

III.     Assuming arguendo that Dr. Waites met his burden of persuasion did Mr. Webb nevertheless meet his burden on production on the essential elements of his medical negligence?

(Brackets in original). For purposes of our discussion below, we have combined issues II and III.

### STANDARD OF REVIEW

¶28. A trial court's grant of summary judgment is reviewed de novo. *Howard v. Rolin Enters. LLC*, 284 So. 3d 772, 775 (¶5) (Miss. Ct. App. 2019). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The evidence must be viewed in the light most favorable to the party opposing the motion." *Johnson v. Pace*, 122 So. 3d 66, 68 (¶7) (Miss. 2013).

¶29. "The grant or denial of a Rule 56(f) motion is reviewed for abuse of discretion."

---

[5] The Webbs are characterizing their Rule 6(b) motion as the equivalent of a Rule 56(f) motion.

*Dillon v. PiCo Inc.*, 239 So. 3d 527, 534 (¶21) (Miss. Ct. App. 2017). "Our standard of review of a trial court's management of the pre-trial discovery process is abuse of discretion." *Partin v. N. Miss. Med. Ctr. Inc.*, 929 So. 2d 924, 938 (¶57) (Miss. Ct. App. 2005). "The decision to grant or deny a continuance is within the sound discretion of the trial court and will be reversed solely where the court abuses that discretion." *O'Hea v. George Reg'l Health & Reha Ctr.*, 276 So. 3d 1266, 1269 (¶6) (Miss. Ct. App. 2018) (quoting *Owens v. Thomae*, 759 So. 2d 1117, 1120 (¶10) (Miss. 1999)).

## DISCUSSION

**I.**     **Whether the trial court abused its discretion by denying the Webbs' motion to extend the discovery deadline.**

¶30.     The trial court granted Forrest General summary judgment because (1) the Webbs failed to meet their burden on the element of causation, and (2) res ispa loquitur was not applicable. On appeal, the Webbs' do not challenge the trial court's summary judgment ruling but instead raise the sole issue of whether the trial court abused its discretion by denying the Webbs' Rule 6 motion to extend the discovery deadline. Even though they ask this Court to consider their Rule 6(b) motion as a Rule 56(f) motion, the Webbs still failed to seek discovery from Forrest General that would have established causation.

¶31.     Rule 56(f) of the Mississippi Rules of Civil Procedure provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court *may* refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

(Emphasis added).

13

¶32. In order to postpone a summary judgment ruling, a party should file a Rule 56(f) motion and, in an affidavit, he "must present specific facts as to why he cannot oppose the motion and must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Brown v. McKee*, 242 So. 3d 121, 129 (¶29) (Miss. 2018) (internal quotation marks omitted). "[T]he failure to file an affidavit is not fatal to a Rule 56(f) motion, if the court concludes that the party opposing summary judgment had been diligent and has acted in good faith." *Rainer v. River Oaks Hosp. LLC*, 282 So. 3d 751, 757 (¶21) (Miss. Ct. App. 2019) (internal quotation marks omitted). The asserting party must also show "what actions have been taken to discover the information that is needed to defend the motion." *Vicksburg Healthcare LLC v. Dees*, 152 So. 3d 1171, 1175 (¶13) (Miss. 2014).

¶33. In this case, the Webbs did not file a Rule 56(f) motion nor submitted any affidavits concerning their need for further discovery against Forrest General, either with their Rule 6(b) motion or at the time of the hearing. The Webbs rely on *Owens v. Thomae*, *supra*, for the proposition that continuances may be proper even though a party opposing summary judgment has not complied with Rule 56(f) if the party has been diligent and had acted in good faith. *Owens*, 759 So. 2d at 1121 (¶17). However, *Owens* is distinguishable from this case in several important respects.

¶34. In that case, Owens, a patient at the University of Mississippi Medical Center, sued two residents and Dr. Thomae for an amputation she suffered when they allegedly failed to diagnose and treat a blood clot. *Id.* at 1119 (¶3). She filed suit more than a year after her

14

injury, and the doctors brought a motion for summary judgment, claiming immunity under the Mississippi Torts Claims Act. *Id.* at (¶5). The issue was whether the doctors were employees or independent contractors at the time of treatment, i.e., the employment status of the doctors. *Id.* at 1118 (¶1). Owens did not file a Rule 56(f) motion or any written motion to continue the summary judgment hearing. *Id.* at 1119 (¶8). But at the hearing, Owens asked for a continuance of the court's ruling so she could undertake further discovery, including the obtaining of the doctors' contracts with UMMC that only UMMC possessed. *Id.* The trial court never explicitly denied her request but granted summary judgment, and Owens appealed. *Id.* at 1120 (¶8). The supreme court reversed the trial court's ruling with respect to Dr. Thomae and reasoned that additional discovery was needed to determine whether he was an independent contractor. *Id*. at 1123 (¶23). The supreme court pointed out that the trial court had the discretion to grant or deny a request for continuance of summary judgment proceedings. *Id.* at 1120 (¶11). It noted that the case was only five months old, *id.* at 1121 (¶15), and because Owens had subpoenaed the employment records that were key to the case during that time, she was not dilatory. *Id.* at (¶16). But because she failed to file an affidavit in support of her request, the court determined she had not been diligent. *Id.* at 1121 (¶17). Yet, at oral argument, Owens did articulate a sufficient reason for continuing the summary judgment hearing—the need for Thomae's contract—and how it would affect the outcome. *Id.* at 1119, 1123 (¶¶8, 23).

¶35.   In this case, the Webbs failed to request, in writing or at oral argument, further discovery against Forrest General. They filed no Rule 56(f) motion and presented no

affidavits that would have supported their need for discovery against the hospital and shown how that discovery would affect the outcome. Even their Rule 6(b) motion to extend discovery failed to request time to obtain documents or depositions with respect to Forrest General. The only specified need the Webbs gave in that motion was the need to depose Dr. Waites's expert, Dr. Main.[6]

¶36.  At the argument on the motions, the Webbs complained that the hospital had failed to cooperate in discovery, but they failed to request time to undertake it or articulate the need. We rejected the excuse of opposing party's non-compliance with discovery as grounds for a continuance of a summary judgment hearing in *O'Hea*, 276 So. 3d at 1270 (¶10). In that case, O'Hea contended that he could not respond to the motion for summary judgment because the hospital evaded providing information in written discovery responses and refused to comply with O'Hea's notices of deposition. *Id*. at 1269 (¶8). We still held that the denial of O'Hea's request for a continuance was not an abuse of discretion because the "request did not contain specific facts or information on any additional discovery that would create a genuine issue of fact." *Id*. at 1270 (¶10). Similarly in *Brown*, the Mississippi Supreme Court found that a request to postpone a summary judgment ruling was properly denied when the discovery requests were not aimed at showing a genuine issue of material fact on Brown's claim of fraudulent concealment. *Brown*, 242 So. 3d at 129 (¶29). Here, unlike *Owens*, the Webbs failed to request time for discovery from Forrest General or show what information

---

[6] Because Dr. Waites was not an employee of Forrest General and was never designated to testify to breaches of the standard of care by hospital employees, deposing Dr. Waites's expert would not establish liability against the hospital.

16

that discovery would reveal that would prove causation—the central in the case.

¶37.  Even if they had requested time for additional discovery against Forrest General, the discovery they said they needed was irrelevant to proving causation.  The Webbs argued that they needed to secure the hospital's policies and procedures to support what they characterized as their claims of "administrative negligence."  But the trial court correctly found that the Webbs' claims of "administrative negligence" were in fact claims of "medical negligence."  As noted in *Crosthwait v. Southern. Health Corp. of Houston Inc.*, 94 So. 3d 1070 (Miss. 2012), Mississippi Code Annotated section 15-1-36 (Rev. 2012) includes claims for injuries arising out of the course of medical, surgical or "other professional services" in medical malpractice claims.  *Id*. at 1074 (¶13).  The Mississippi Supreme Court has "held that a 'professional service' involves the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment."  *Id.*  For such claims, a medical expert would need to testify.  *Scales v. Lackey Mem'l Hosp.*, 988 So. 2d 426, 433 (¶17) (Miss. Ct. App. 2008).  "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Crutchfield v. Magnolia Reg'l Health Ctr*., 249 So. 3d 445, 449 (¶10) (Miss. Ct. App. 2018) (quoting *Burner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)).  In this case, the only medical expert the Webbs designated was Dr. Rellas, and his designation contained no opinions directed at negligence by employees of Forrest General or causation.  Accordingly, the discovery the Webbs said they needed relative to Dr. Main would not have impacted the

17

court's ruling on Forrest General's summary judgment motion.

¶38. Because the Webbs failed to request additional time to conduct discovery against Forrest General and because the information they say they lacked would not have established negligence by Forrest General employees or causation for Mr. Webb's injury, we find no abuse of discretion by the trial court in denying the Webb's motion for a continuance or extension of deadlines.

**II.  Whether Dr. Waites and the Clinic were entitled to summary judgment.**

¶39. The trial court held that because the Webbs had not presented sufficient evidence to establish a prima facie case of medical negligence, Dr. Waites and the Clinic were entitled to judgment as a matter of law.[7] After a review of the record, we agree.

¶40. The Mississippi Supreme Court has held that "[a] party against whom a claim is asserted may, at any time, move with or without supporting affidavits for summary judgment . . . ." *Johnson*, 122 So. 3d at 68 (¶8) (emphasis omitted). The movant has the burden, "once the facts are on the table, of persuading the court (1) that there is no genuine issue of material fact and (2) that the movant is entitled to judgment as a matter of law." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). "In a medical-malpractice action, the plaintiff carries the burden of proof at trial and, thus, the burden of production on summary judgment." *Johnson*, 122 So. 3d at 68 (¶8). Further,

> [i]n a summary judgment proceeding, the plaintiff must rebut the defendant's

---

[7] At the trial-court level, the Webbs argued that res ipsa loquitur applied against Dr. Waites. Although the trial court found that it did not, the Webbs do not challenge the trial court's ruling regarding res ipsa loquitur on appeal.

claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of significant and probative value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of her injury.

*Palmer*, 564 So. 2d at 1355-56 (emphasis omitted). "Mere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment." *Id*. at 1356. In other words, "the plaintiff may not rely solely upon the unsworn allegations in the pleadings, or arguments and assertions in briefs or legal memoranda." *Id.* (internal quotation mark omitted). "The party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed genuine issues for trial." *Id.* (internal quotation mark omitted). This means, in order "to generate a genuine issue of material fact, the affidavit or otherwise (e.g., depositions and answers to interrogatories) must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify." *Id.*

¶41. The plaintiff establishes a prima facie case for medical malpractice by showing:

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result.

*Cates v. Woods*, 169 So. 3d 902, 906 (¶11) (Miss. Ct. App. 2014) (quoting *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (¶9) (Miss. 2011)). This Court has held that in most medical malpractice claims, "expert testimony must be used." *Posey v. Burrow*, 93 So. 3d

905, 907 (¶8) (Miss. Ct. App. 2012) (quoting *Barner*, 605 So. 2d at 809).[8]

¶42.    Further, "not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id*.  This Court has further held that "unless the matter is within the common knowledge of laypersons, to establish a prima facie case of medical negligence against a physician, a plaintiff must present competent expert testimony as to the applicable standard of care, breach, and proximate causation." *Haley v. Jurgenson*, 154 So. 3d 935, 938 (¶11) (Miss. Ct. App. 2015).  "The expert opinion of a doctor as to causation must be expressed in terms of medical probabilities as opposed to possibilities." *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1202 (¶20) (Miss. 2012).

¶43.    In *Littleton*, we reversed the trial court's judgment against UMMC, finding that Littleton's expert's testimony was insufficient to prove causation.  *The Univ. of Miss. Med. Ctr. v. Littleton*, 213 So. 3d 525, 538-39 (¶38) (Miss. Ct. App. 2016).  Littleton's expert, Dr. David Wiggins, testified that UMMC's physicians and staff negligently failed to recognize a patient's worsening condition because her temperature had elevated through the day and her blood pressure had dropped.  *Id*. at 539 (¶39).  In Dr. Wiggins's expert opinion, the patient's death was caused by "the alleged failure to send her to the ICU where she would have been more closely monitored." *Id*. at 536 (¶31).  But Dr. Wiggins "did not identify what

---

[8] An exception is made in certain cases "where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Coleman v. Rice*, 706 So. 2d 696, 698 (¶10) (Miss. 1997).  Again, this exception, res ipsa loquitur, was not raised as an issue on appeal.

care should have been provided and how that care, more likely than not, would have allowed [the patient] to survive." *Id*. Dr. Wiggins also failed to explain how UMMC's failure to provide supportive care or transfer the patient to the ICU caused or contributed to her death. *Id*. at 539 (¶38). Therefore, Dr. Wiggins failed to establish a causal connection between UMMC's alleged negligence and the patient's death because his testimony was impermissibly based on speculation. *Id*. at 536 (¶31). We found that the trial court abused its discretion in relying upon Dr. Wiggins's testimony because it was speculative. *Id*. at 539 (¶39).

¶44.    In *Perez*, we affirmed the trial court's grant of summary judgment because the medical expert's opinion failed to show causation. *Perez* v. *Univ. of Miss. Med. Ctr.*, 75 So. 3d 609, 612 (¶17) (Miss. Ct. App. 2011). Perez filed suit against UMMC and Cardinal Health after claiming that administering Floxin Otic to his eye, instead of his prescribed medication Ocuflox, resulted in his loss of an eye. *Id*. at 610 (¶¶4-5). UMMC and Cardinal Health filed a motion for summary judgment because Perez failed to establish causation. *Id*. at (¶6). UMMC and Cardinal Health maintained that the affidavit of Perez's expert, Dr. David Berry, "lacked sufficiency to prove that the dispensing of Floxin Otic instead of Ocuflox constituted the proximate cause of the harm to Perez's eye." *Id*. The trial court granted the motion for summary judgment. *Id.* at 611 (¶9). After review of Dr. Berry's affidavit, we found that Dr. Berry "failed to provide any evidentiary support for his conclusion that the difference in the preparation of the two solutions would cause harm if Floxin Otic is used in the eye instead of the ear" or how the solutions differed. *Id.* at 612 (¶15). Dr. Berry failed to explain how

21

or why using Floxin Otic instead of Ocuflux could have caused Perez's eye injury. *Id.* at (¶16). Therefore, we affirmed the trial court's grant of summary judgment. *Id.* at (¶17).

¶45.    Like *Littleton* and *Perez*, Dr. Rellas's medical affidavit does not provide sufficient evidence to establish that Dr. Waites's negligence caused Mr. Webb's injury. Dr. Rellas stated that Dr. Waites breached the standard of care, but Dr. Rellas failed to provide any casual connection between Dr. Waites's alleged negligence and the injury. In Dr. Rellas's affidavits, he states several breaches of the requisite standards of care but fails to articulate how Dr. Waites's alleged actions, or lack of actions, were the proximate cause of Mr. Webb's alleged injury. Neither the designations nor Rellas's affidavits even mention the words "cause" or "causation." Furthermore, Dr. Rellas's affidavit states:

> [T]he combination of a difficult entry into the esophagus and blood on the probe is <u>worrisome</u>. Medical prudence would suggest evaluation of this clinical setting before continuing the procedure . . . . More prompt evaluation of Mr. Webb was indicated and <u>may</u> have decreased his additional 8 days in the hospital, his additional morbidity Including prolonged intubation and his well being in the months to come.

Dr. Rellas's opinion, if a statement in causation at all, is more a mere possibility rather than probability, which is insufficient to establish causation. He does not establish with "reasonable medical probability" that Dr. Waites's alleged negligence caused Mr. Webb's alleged injury.

¶46.    In summary, while Dr. Rellas stated that Dr. Waites breached the standard of care, he failed to sufficiently show causation of the injury by the breach of duty. Therefore, the trial court did not err in granting Dr. Waites and the Clinic's motion for summary judgment.

## CONCLUSION

¶47. For the reasons stated above, we affirm the trial court's order granting Forrest General's motion for summary judgment and the trial court's order granting Dr. Waites and the Clinic's motion for summary judgment.

¶48. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., NOT PARTICIPATING.**